MATTER OF J——

In DEPORTATION Proceedings

A-11333340

*Decided by Board August 12, 1958*

**Loss of citizenship—Section 350 of the 1952 act—Benefit sought must be substantial and must be followed by 3 years' residence in foreign state—Obtaining foreign passport without using it not sufficient to cause expatriation.**

(1) Expatriation under section 350 of the 1952 act does not take place unless the benefits of the foreign nationality are sought or claimed after December 24, 1952, following which, and subsequent to the individual's 22nd birthday, he must have resided in the foreign country for 3 years. (Cf. *Matter of G——Q——*, A-8949245, 7 I. & N. Dec. 195; *Matter of V——*, A-8943827, 7 I. & N. Dec. 218.)

(2) Australian passport obtained in 1947 by dual national of United States and Australia who resided in latter country between December 24, 1952, and March 5, 1957, the date he commenced to reside in the United States, did not cause loss of U.S. citizenship under section 350 in absence of convincing evidence that foreign passport was used in travel during that period.

(3) Presentation of Australian passport at time of admission to U.S. on March 5, 1957, although constituting a claim to the benefits of foreign nationality, did not result in expatriation since subject did not thereafter complete 3 years in residence in Australia.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Admitted as
    nonimmigrant—Remained longer than permitted.

**BEFORE THE BOARD**

**Discussion:** This case is before us on appeal from a decision of a special inquiry officer directing the respondent's deportation.

The respondent is a 30-year-old married male, a native of Australia claiming United States citizenship, who last entered the United States on March 5, 1957, and was admitted as a nonimmigrant for business. The period of his authorized admission expired on March 5, 1958. He had been in the United States on only one prior occasion, that is, as a visitor from August 23, 1947, to October 1948.

The sole issue to be determined is whether the respondent is a United States citizen or an alien. For the reasons hereinafter stated, we hold that the Government has not established alienage.

112

We are satisfied from the evidence of record that the respondent's parents were lawfully married on March 12, 1927, and that he was born in Australia on March 3, 1928. We agree with the special inquiry officer that it has been satisfactorily established that the respondent's father was born in Oklahoma on June 19, 1899. He lived in the United States until 1905, or later, when his parents returned to Australia and thereafter he remained in Australia until his death in 1946. His death certificate contains the statement that he was born in Oklahoma City, United States of America. The respondent testified that his father never committed any expatriating act and always considered himself a United States citizen.

The respondent's father became a United States citizen under the 14th Amendment to the Constitution of the United States and section 1992 of the Revised Statutes. The respondent acquired United States citizenship under section 1993 of the Revised Statutes. The issue resolves itself into whether the respondent has become expatriated.

The special inquiry officer held that the respondent became expatriated under section 350 of the Immigration and Nationality Act (8 U.S.C. 1482) which provides, in part, as follows:

A person who acquired at birth the nationality of the United States and of a foreign state and who has voluntarily sought or claimed benefits of the nationality of any foreign state shall lose his United States nationality by hereafter having a continuous residence for three years in the foreign state of which he is a national by birth at any time after attaining the age of twenty-two years unless he shall * * *.

The special inquiry officer adopted the factual allegations and the charge contained in the order to show cause as his findings of fact and conclusion of law. The order to show cause does not contain any allegation that the respondent was ever a citizen of the United States or that he became expatriated. Hence, the result of the special inquiry officer's adoption of the factual allegations is that, on the issue of expatriation, the formal findings of fact are merely that the respondent is not a citizen or national of the United States and that he is a native and national of Australia. While adoption of the factual allegations in the order to show cause is in accordance with 8 CFR 242.17, we believe that additional findings of fact should be made where they are essential as in the respondent's case. Here, there should have been formal findings of fact as to the specific matters which would bring the case within the terms of 8 U.S.C. 1482.

Neither the examining officer nor counsel questioned the respondent at the hearing as to whether he had sought or claimed the benefits of Australian nationality. It is clear that the Government relies entirely on an affidavit (part of ex. 2) which was made by

the respondent on September 11, 1957, and the special inquiry officer set forth in his decision (pp. 2 and 3) much of the contents of the affidavit. The respondent applied for an Australian passport on or about June 2, 1947, and traveled to various countries between that date and March 5, 1957, when he last arrived in the United States. Parenthetically, we observe that while the plural form "passports" was used at one point in the special inquiry officer's decision, the record does not disclose whether the respondent obtained any Australian passport other than the one issued on June 2, 1947, nor whether it was ever revalidated. While the respondent had been absent from Australia at various times, we believe that the evidence of record required a finding that he resided continuously in Australia from his birth until March 5, 1957, and that since that date he has resided in the United States. His wife and children accompanied him to this country on the date mentioned.

The special inquiry officer cited our decisions in *Matter of G——Q——*, A–8949245, 7 I. & N. Dec. 195 (May 7, 1956), and *Matter of V——*, A–8943827, 7 I. & N. Dec. 218 (May 15, 1956). Apparently he was of the opinion that the respondent used the Australian passport after December 24, 1952, and that this was sufficient to bring about expatriation under the decision in *Matter of V——*, *supra*. In that case, there was a claim of Mexican nationality on December 20, 1951, and we held, in effect, that there was a continuing claim of Mexican nationality until after the effective date of the Immigration and Nationality Act (December 24, 1952). However, both decisions make it clear that the 3-year-period of residence mentioned in 8 U.S.C. 1482 cannot begin to run until after December 24, 1952. Hence, we disagree with a statement in the special inquiry officer's decision which is to the effect that, since the respondent became 22 years of age on March 3, 1950, the requirement concerning the 3-year-period of residence was fulfilled on March 3, 1953.

*Matter of V——*, *supra*, did not alter any of the principles set forth in *Matter of G——Q——*, *supra*. We held there that 8 U.S.C. 1482 must be given prospective application; that acts performed prior to the effective date of the Immigration and Nationality Act (December 24, 1952) must be disregarded; and that there must be a seeking or claiming of the benefits of a foreign nationality after December 24, 1952, following which, and subsequent to the individual's 22nd birthday, there must be a residence of 3 years in the foreign state.

When the respondent applied for an Australian passport on or about June 2, 1947, he was seeking and claiming the benefits of his Australian nationality. However, such action did not cause expatriation under the law then in existence, and the 1947 applica-

tion must also be disregarded under 8 U.S.C. 1482, effective December 24, 1952, for the reasons stated in *Matter of G——Q——*, *supra*. Similarly, 22 CFR 50.6 is not controlling. Although this regulation does not purport to set forth all the acts which might constitute seeking or claiming the benefits of a foreign nationality, it does specifically mention *"applying* for a foreign passport or identity card" but is silent as to the *use* of a foreign passport previously obtained.

In view of what has been said, we need not concern ourselves with the respondent's activities prior to December 24, 1952, but only with events occurring subsequent thereto. The respondent's affidavit of September 11, 1957, shows that he returned to Australia in September 1951, and remained there until he went to England, the date of the trip to England being stated in the affidavit both as "1954" and "June 1953." He came back to Australia in June 1954, and thereafter divided his time between Australia and New Zealand until his departure for the United States in March 1957.

When the respondent presented his passport at the time of his admission to the United States on March 5, 1957, he was claiming the benefits of Australian nationality. Our decision in *Matter of G——Q——*, *supra*, demonstrates that the presentation by the respondent of the Australian passport on March 5, 1957, did not cause expatriation because he did not thereafter complete 3 years' residence in Australia. Similarly, since we hold that he has resided in the United States since March 5, 1957, it necessarily follows that any claim of the benefits of Australian nationality sufficient to cause expatriation must have occurred more than 3 years prior to March 5, 1957. In other words, it must have antedated March 5, 1954, because a claim after that date would not have resulted in the completion of 3 years' residence in Australia. Since the claiming of the benefits of Australian nationality must also have occurred subsequent to December 24, 1952, it is obvious that such claim must have been made between December 24, 1952, and March 5, 1954. The only event that occurred during that period was that the respondent traveled from Australia to England in "1954" or in June 1953.

In view of the foregoing, the question to be determined is further resolved into whether, on the one occasion mentioned above, the respondent used his Australian passport; whether, if such use occurred, it constituted the seeking or claiming of a benefit of Australian nationality; and whether in accordance with our decision in *Matter of R——S——*, A–8993287, 7 I. & N. Dec. 718 (May 26, 1958), the benefit sought was substantial and indicative of a preference for the foreign country to a degree inconsistent with United States citizenship.

In connection with the question of whether the respondent used his passport on the journey to England in 1954 or in June 1953, his affidavit of September 11, 1957, contains four references to his use of an Australian passport. In the order in which they appear in the statement, these references are: (1) that he used an Australian passport in August 1947; (2) that he used it in October 1948; (3) that he always traveled on his Australian passport, a statement which follows an account of his activities between October 1948 and November 1949, and precedes an account of his activities subsequent to November 1949; and (4) that he used his Australian passport when he entered the United States in March 1957. Other than the all-inclusive third statement, the respondent made no specific admission that he used the passport at any time subsequent to December 24, 1952, and prior to his arrival in the United States in March 1957. In the absence of any specific admission by the respondent that he presented an Australian passport on the occasion of his journey to England in 1953 or 1954 and inasmuch as this travel was between two countries of the British Empire, we do not believe it has been established that the respondent sought or claimed the benefits of Australian nationality at that time.

It is well settled that in a deportation proceeding the burden of establishing alienage rests upon the Government (*United States ex rel. Bilokumsky* v. *Tod*, 263 U.S. 149, 153 (1923)). It was held in *Gonzales* v. *Landon*, 350 U.S. 920 (1955), that the Government must establish expatriation by clear, convincing and unequivocal evidence.

The principle stated in the *Gonzales* case was extended in *Nishikawa* v. *Dulles*, 356 U.S. 129 (March 31, 1958), in which the Court said (pp. 135, 137) that the Government also has the burden of proving by clear, convincing and unequivocal evidence "that the act showing renunciation of citizenship was voluntarily performed" and that voluntary conduct is the essential ingredient of expatriation. The question involved was whether expatriation occurred because of the citizen's service in the Japanese army, and the court held that the Government had not established that the service was voluntary. Counsel cited this case and apparently contends that the respondent's application for an Australian passport on June 2, 1947, was not voluntary because he had previously attempted to obtain a United States passport without success. Since we have held that the respondent's 1947 application for passport must be disregarded, we need not consider this contention.

Two other decisions of the Supreme Court on March 31, 1958, have a certain relevance. Both involved section 401 of the Nationality Act of 1940 as amended (8 U.S.C. 801, 1946 ed.). *Perez* v. *Brownell*, 356 U.S. 44, held that subdivision (e) of that section

116

was within the authority of Congress under its power to regulate relations of the United States with foreign countries. *Trop* v. *Dulles*, 356 U.S. 86, held that subdivision (g), as applied to *Trop*, exceeded constitutional limits and that he did not become expatriated.

For the reasons indicated above, we do not believe that the Government has established that the respondent is an alien. Accordingly, we sustain his appeal.

**Order:** It is ordered that the appeal be sustained; that the special inquiry officer's order of deportation be withdrawn; and that the proceedings be terminated.